UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED BULL NEW YORK, INC. and RED BULL ARENA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ARENAS, PARKS AND STADIUMS SOLUTIONS, INC., <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs Red Bull New York, Inc. ("RBNY") and Red Bull Arena, Inc. ("RBA" and, collectively, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendant Arenas, Parks and Stadiums Solutions, Inc. ("APS" or "Defendant"), allege as follows:

## THE PARTIES

1. Plaintiff RBNY is a corporation organized under the laws of the State of Delaware with its principal place of business located at 600 Cape May Street, Harrison, New Jersey 07029. RBNY is a citizen of the States of Delaware and New Jersey.

2. RBNY operates the New York Red Bulls, a professional soccer club in Major League Soccer ("MLS").

3. Plaintiff RBA is a corporation organized under the laws of the State of Delaware with its principal place of business located at 600 Cape May Street, Harrison, New Jersey 07029. RBA is a citizen of the States of Delaware and New Jersey.

4. RBA operates and manages the arena located in Harrison, New Jersey, known as "Red Bull Arena."

5. Defendant APS is a corporation organized under the laws of the State of New York with its principal place of business located at 45 Nicole Lane, Wingdale, New York, 12594. APS is a citizen of the State of New York.

6. Upon information and belief, Defendant is a contractor for carpentry, flooring, painting and maintenance for property owners, developers and general contractors in the United States.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that this is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

**FACTS COMMON TO ALL COUNTS**

9. This is a simple breach of contract action. Pursuant to a written agreement, Plaintiffs granted Defendant certain sponsorship rights in exchange for Defendant's promise to pay sponsorship fees totaling $205,000.00 for the year 2016. Plaintiffs fully performed under the contract in 2016, while Defendant failed to pay any portion of the $205,000.00 due and owing under the contract. As a result, Defendant has breached the parties' contract and owes Plaintiffs $205,000.00 in sponsorship fees, plus late charges for failure to timely pay such sponsorship fees.

10. Specifically, Plaintiffs and Defendant signed a 2016 Joint Arena/Club Local Sponsor Agreement (the "Agreement"), effective as of July 7, 2016, for a term commencing on July 7, 2016 and ending on December 31, 2020, which governed Defendant's sponsorship

rights and benefits with respect to the New York Red Bulls and Red Bull Arena. A redacted copy of the Agreement is attached as Exhibit A.

11. Defendant's sponsorship rights under the Agreement included (a) sponsor designation rights, which permitted Defendant to designate itself as "Official Paint and Flooring Contractor of the New York Red Bulls"; (b) use of certain intellectual property, including but not limited to the official trade names and logos of the New York Red Bulls and Red Bull Arena; (c) right of last refusal with respect to business opportunities, if any, for steel painting, structural painting, industrial floor coating, floor waterproofing, and general related painting services at Red Bull Arena; (d) Plaintiffs introducing Defendant to other MLS clubs to enable Defendant to solicit business from such clubs; (e) sponsor recognition during certain events held at Red Bull Arena through Red Bull Arena's LED systems; (f) use of a skybox and tickets for events held at Red Bull Arena, which included guest passes, access to the Skybox Lounge, food and beverages, and valet parking passes; and (g) publication of a press release announcing the formation of the sponsorship relationship.

12. Pursuant to Section 7 of the Agreement, in 2016 Defendant was to pay Plaintiffs sponsorship fees for the aforementioned rights totaling $205,000.00 within fifteen (15) days of receiving Plaintiffs' invoice.

13. Pursuant to Section 7 of the Agreement, late payments are subject to a monthly service charge of 1.5%.

14. Plaintiffs fulfilled all of their obligations under the contract in 2016.

15. Pursuant to Defendant's right of last refusal with respect to certain business opportunities at Red Bull Arena, in an agreement dated September 29, 2016, RBA contracted with Defendant to paint structural steel columns on Red Bull Arena's concourse. After

Defendant performed the work contracted for, Defendant sent RBA an invoice on or about October 27, 2016 for $100,339.81.  RBA paid Defendant's invoice in full on or about November 7, 2016.

16. Plaintiffs introduced Defendant to the Dallas Cowboys by delivering contact information for Defendant to the Cowboys on or about October 12, 2016.

17. Plaintiffs made several attempts to solicit from Defendant the information and graphics necessary to provide sponsor recognition during Red Bull Arena events through the LED systems but Defendant repeatedly failed to provide the information and graphics, thereby preventing Plaintiffs from completing this task.  Specifically, a representative of Plaintiffs contacted Defendant's agent on September 1, 2016; September 20, 2016; October 10, 2016; and October 26, 2016 but never received the appropriate files from Defendant.

18. Plaintiffs delivered to Defendant skybox tickets for the 2016 season, which Defendant made use of on six occasions.  The skybox has a value of $75,000.00.  In the course of using the skybox, Defendant's representatives and guests consumed $8,227.32 worth of food and beverages.

19. Plaintiffs issued a press release on October 7, 2016 regarding the Agreement with Defendant.

20. Plaintiffs sent two invoices to Defendant totaling $205,000.00 on August 10, 2016.  Copies of these invoices are attached as Exhibit B.

21. Defendant failed to remit payment for the invoices.

22. Plaintiffs subsequently sent several written notices to Defendant notifying Defendant of its failure to timely pay the sponsorship fees and attempting to collect such fees.

Notices were sent on October 26, 2016; November 14, 2016; November 29, 2016; December 9, 2016; December 13, 2016; and December 20, 2016.

23. Plaintiffs' December 20, 2016 communication to Defendant offered to waive the late charges of $9,225.00 accumulated to date provided that payment of $205,000.00 was received by December 22, 2016.

24. Defendant failed to pay $205,000.00 in response to any of these notices.

25. Notwithstanding Defendant's ongoing and continuing failure to pay Plaintiffs, which constituted a material breach of the Agreement, Plaintiffs continued to perform their obligations under the Agreement through the end of 2016.

26. By letter dated January 12, 2017, Plaintiffs terminated the Agreement pursuant to Section 10 of the Agreement because of Defendant's failure to pay the 2016 sponsorship fees.

27. In 2017, Plaintiffs continued to notify Defendant of its failure to timely pay the 2016 sponsorship fees and attempted to collect such fees.

28. To date, Defendant has failed and continued to refuse to pay the sponsorship fees and late charges, which continue to accrue under the Agreement.

## COUNT I

### BREACH OF CONTRACT

29. Plaintiffs repeat and reallege each and every allegation contained in the proceeding paragraphs of the Complaint as if they were set forth in full herein.

30. Plaintiffs and Defendant are parties to the Agreement whereby Defendant agreed to pay Plaintiffs $205,000.00 in exchange for the grant of certain sponsorship rights.

31. Plaintiffs fully performed all of their obligations under the Agreement in 2016.

32. Defendant has failed to pay any portion of the $205,000.00 plus late charges due and owing under the Agreement.

33. Defendant's breach of the Agreement has caused Plaintiffs to suffer monetary damages.

## COUNT II

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

34. Plaintiffs repeat and reallege each and every allegation contained in the proceeding paragraphs of the Complaint as if they were set forth in full herein.

35. Implied in every contract is a covenant of good faith and fair dealing.

36. Defendant breached that covenant of good faith and fair dealing by refusing to pay Plaintiffs the $205,000.00 plus late charges that it owes under the Agreement.

37. Defendant's breach of the implied covenant of good faith and fair dealing has caused Plaintiffs to suffer monetary damages.

## COUNT III

### UNJUST ENRICHMENT

38. Plaintiffs repeat and reallege each and every allegation contained in the proceeding paragraphs of the Complaint as if they were set forth in full herein.

39. By fully performing under the Agreement, Plaintiffs conferred benefits upon Defendant.

40. By retaining such benefits without paying for them, Defendant has been unjustly enriched at Plaintiffs' expense.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant for

6978559.4

compensatory damages, attorneys' fees, the costs and disbursements of this action, and such other relief as the Court deems appropriate.

                                           CHIESA SHAHINIAN & GIANTOMASI PC
                                           Eleven Times Square, 31st Floor
                                           New York, NY 10036
                                           973-325-1500
                                           Attorneys for Plaintiffs
                                           Red Bull New York, Inc. and Red Bull Arena, Inc.


                                           By      /s Margaret O'Rourke
                                                  MARGARET O'ROURKE

Dated:  October 11, 2017
        New York, New York

6978559.4